Henry C. Withers and Henry H. Montgomery v. Isaac R. Kinser.

1. VERDICTS—*When to be Set Aside.*—Where there is no reliable evidence upon which to support a finding by a jury, the verdict must be set aside.

Memorandum.—Assumpsit. Appeal from the Circuit Court of Greene County; the Hon. LYMAN LACEY, Judge, presiding. Heard in this court at the November term, 1892. Reversed and remanded. Opinion filed October 28, 1893.

The opinion states the case.

APPELLANTS' BRIEF, HENRY T. RAINEY, ATTORNEY.

A strong presumption arises that a settlement of accounts between parties embraces all the items each has against the other, which are due.    Straubher v. Mohler, 80 Ill. 21.

In the absence of fraud or mistake, a settlement deliberately made is binding and conclusive.    Sutphen v. Cushman, 35 Ill. 186; Eddie v. Eddie, 61 Ill. 134.

"When parties reduce their contracts to writing, the writing alone must speak their intention."    Stookey v. Hughes et al., 18 Ill. 57.

JAMES R. WARD, attorney for appellee.

MR. PRESIDING JUSTICE PLEASANTS DELIVERED THE OPINION OF THE COURT.

In January, 1886, appellee's farm was incumbered by two mortgages, then amounting, with interest at eight per cent, to very nearly $1,300.    This indebtedness was not imme-

diately pressing, but was nearing maturity, and money was not easily obtainable at that rate in Greene county. Appellants were correspondents for that county, of C. E. & C. M. Anthony, of Peoria, loan agents for Illinois of the Connecticut Mutual Life Insurance Company. Appellee called on them with a view to procuring a loan to satisfy these mortgages. He wanted the money for five years, and they told him the company, through the Anthonys, loaned at six per cent, but he would have to pay the commissions and expenses attending the procuring of the loan. They estimated the amount that would be required to pay off the mortgages, with the commissions and expenses, at $1,500. He signed an application for that amount, and a commission contract with the Anthonys, dated January 7, 1886, by which, among other things, he agreed " to pay them a commission of ten per cent on the above amount as well as all expenses." It also contained the following: " Should said firm be unwilling to complete said loan on account of the title to any part of the lands offered as security not being acceptable to them, or because such lands are not as represented in my application therefor, I hereby agree to pay them any attorney's fees and other expenses they or their correspondents may incur in the furtherance of such loan."

On March 19th, he made and delivered his six notes to the company, one for the principal sum, at five years, and the others each for $90, and due respectively in one, two, three, four and five years, and executed his mortgage deed to secure their payment. These with the abstract and other papers relating to the security, were sent by appellants to the Anthonys, who in return sent them a draft for $1,500 payable to the order of appellee, which he indorsed to them.

Out of the proceeds they paid the mortgage debts, $1,294.51, deducted for commissions as per agreement $150, and claim to have paid, in items specified, for insurance, taxes, costs (in judgment), recording, etc., charged for abstract, opinion, etc., all toward the making and showing of a clean title to the mortgaged premises, the sum of $88.45. Total, $1,532.96.

Appellants charged these items to appellee as they accrued, and their book showing them, was in evidence. They testified that every payment made was required by the Anthonys and necessary to clear the title, and that every service charged for was also proper to that end, usual in like cases, reasonable in amount and actually rendered, in short were all "expenses properly incurred in the further-ance of the loan,"—and nobody contradicted.

The last of these items, being $37.95 for a balance of costs due by judgment against appellee, accrued by its pay-ment by appellants on the 5th day of April, 1886, and on that day appellee gave them his note for the $32.96 in excess of the $1,500, which note he paid in June following, without complaint; nor was any made until just before this suit was commenced, which was five years thereafter, in August, 1891.

It was brought on the common counts, especially the count for money had and received by defendants to his use. They plead the general issue alone. The first trial resulted in a verdict in his favor for $61, which the court set aside; and the second for $157.95, of which he remitted $120, and judgment was entered, after a motion for a new trial over-ruled, for $37.95.

We think there was no reliable evidence that would sup-port a finding for any amount whatever. The testimony of appellee, who was his own sole witness in chief, was clearly overborne and outweighed by contradiction, and in-credible in itself. He stated that in March, 1891, when he sent to the company the principal sum of $1,500, they re-fused to receive it because one year's interest remained unpaid; that appellants had told him when the loan was made that the first year's interest would have to be paid in advance, and he all along understood they had so paid it. Yet he knew and testified to the terms of the loan in that respect as above stated; that he had given a separate note for the interest of each of the five years, of which the first was made payable March 19, 1887, one year after its date, and further swore that he paid one in March of each year

following the loan for five successive years. Appellants'
statement of their account, which they say they rendered to
him on April 5, 1886, including every item charged against
him, contained none for the first year's interest. He says
they never showed nor made any statement of the account
to him; and yet on that day he gave them his note for the
exact balance it showed against him. It can hardly be
believed that business men who only a few days before had
received $1,500 of his money, to be expended by them for
him for divers purposes and in parcels of different amounts,
some of which were not then precisely known, asked him
for $32.96, as so much over the $1,500 that they had so
expended, without giving him a statement of the account;
and that he gave his note for it without seeing or under-
standing and being satisfied with such statement.

The supposed discovery that he "had been caught," as he
expresses it, in the matter of the year's interest, prompted
him to call upon appellants for explanation, and having
failed in two efforts to find either in his office, to employ an
attorney and bring this suit. He testified that his contract
for their services in procuring the loan was made with Mr.
Montgomery; that he understood appellants were partners;
that Mr. Withers might have said a few words, but the con-
tract was all with Montgomery, and he did all the writing;
and that by the contract made he was to pay them $30,
which was to be in full for all their services, including the
straightening up of his title and the making of the abstract.
He admitted his understanding was that he was "to pay six
per cent on the money borrowed and give them two per
cent for getting it," but positively denied that he was to give
them ten per cent or two per cent per annum for the five
years, and persisted in the statement that "thirty dollars"
was the amount agreed on.

Upon no one of these statements is he corroborated by
anything appearing in the record, but upon each is over-
whelmed with contradiction—by the oral testimony of
Withers and of Montgomery, by the written application and
contract signed respectively by himself, by the account ren-

dered on the settlement of April 5, 1891, and by all the circumstances and probabilities of the case as shown. Appellants both testified that in the beginning the terms of the loan, the amount of commissions (ten per cent), and what would be required to make the proposed security acceptable, with the probable expense thereof, were fully explained to and understood by him; that their estimate of the amount he would need, based upon his statements, fell short of what it proved to be by only $32.96; and that at its close, upon full information of all they had done and charged, he settled according to their statement and with apparent satisfaction. Their statement showed the charge for commissions as $150. Not one of the papers relating to the transaction between these parties was written by Montgomery. Withers prepared the application for the loan, and administered to appellee the oath by which he verified its statements. He also prepared the commission contract, which was not with appellants for any amount, but with the Anthonys, and as we have seen, bound appellee to pay them a commission of ten per cent on the amount loaned, and any attorneys' fees and other expenses that they or their correspondents should incur in furthering its obtention. That they undertook to obtain it, do the work required to clear the title to the land and furnish a complete abstract—all for $30, would be highly improbable, if not incredible, on its face; we might reasonably suppose from his own statement that through ignorance he had mistaken their proposition for two per cent per annum, for two per cent on the amount loaned, and paid no attention to the contract he signed or to the account they rendered on settlement.

The complaints he made in his testimony were that appellants, in breach of their agreement, had not paid a year's interest in advance out of the $1,500; had withheld for commissions $150, instead of $30, and had charged him with the expenses attending the clearing of the title and the making of the abstract. These, if well founded, would have entitled him to a judgment for something over $250, which would have given him gratis, the services of appellants and an

abstract of his title, besides a clear donation out of their pocket of nearly $200.

But we think neither of them finds any plausible support in the evidence. It affirmatively and abundantly shows that appellee mis-stated the agreement as to each of these particulars, and that what appellants did and charged was in strict accordance with it. Appellee and his counsel were satisfied of that, as was evidenced by their remittitur. His claims on these grounds are here abandoned, and the judgment is defended solely upon an alleged error in one item charged as a disbursement.

It appears that on September 22, 1883, one Crist Weitzel recovered judgment against appellee for $112.70 and costs, amounting to $175.10. Execution thereon was issued and delivered to the sheriff, October 17, 1883. The damages and interest had been paid in full, and the costs in part; but the execution had not been returned, nor the judgment satisfied of record. The item in question was $37.95, the precise amount of the judgment rendered in this case after remittitur entered, which appellants claimed to have been paid by them, to satisfy it, as was required by the Anthonys. Montgomery testified that on April 5, 1886, he went to the office of the circuit clerk in company with the appellee, and upon examination then ascertained that there remained due and unpaid for costs in that case, a sum exceeding that of the item in question, but the exact amount he did not remember; that appellee then had enough money about him to pay that amount except the sum of $37.95, and that he, Montgomery, then gave the clerk or sheriff, in presence of appellee, his check on the Carrollton Bank for that sum. He produced that check, dated April 5, 1886, payable to "A Connole, Circuit Clerk, or bearer," as returned to him by the bank, and it was admitted in evidence. The return on the execution dated the same day, showed the balance then received and returned, with the execution, to the circuit clerk, to be $69.05. The judgment docket, referring to that execution, showed the judgment satisfied in full on that day. Montgomery swore that the check went to make up the bal-

ance of $69.05, that satisfied the judgment; and neither the appellee, the clerk, nor the sheriff, all of whom were afterward asked about it, denied it. They only did not remember it, after so long a time. Appellee recollected the fact that he went with Montgomery to the clerk's office, to see about that judgment, and admitted that something might then have been said about the balance of costs unpaid, but would not, because he could not, for want of recollection, say whether Montgomery then paid or checked for the $37.95. We therefore think the proof that he did, was plenary.

From the evidence, then, we see nothing in this transaction which should subject appellants to censure, or of which appellee can justly complain. By it he, in effect, obtained an extension of credit for five years, at the same rate, including the commission's, that he was then and had been paying upon his mortgages; and though he borrowed more than was required to satisfy them, the excess was expended in his interest. Had he procured the loan at home it would have cost him more.

It is said upon the authority of Payne v. Newcomb, 100 Ill. 611, that the commission contract was usurious, and the retention by appellants of the $150, was unlawful. But counsel do not tell us how the fact can be made available for any proper purpose in this suit. It is presented, rather incidentally, in connection with some criticism of two small items charged (which we think the evidence fully justified as reasonable and proper), to sustain a verdict which plaintiff himself discredited by his remittitur of nearly four-fifths of the amount found. The case cited, teaches, not that the commission contract with the Anthonys was usurious, but, if anything, the contract with the insurance company, the loan itself, and that if appellee had not paid the last dollar of principal and interest, he might, in a suit by the company against him, recover by set-off the usurious interest previously paid; but having paid both in full, five years before, he was without remedy, even against the usurer.

This verdict should have been set aside, and for the refusal to so order, the judgment of the Circuit Court will be reversed and the cause remanded.